UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT JOHNSON, et al., | CASE NO. C16-1031JLR |
| Plaintiffs, | ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DECLINING SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS |
| v. | |
| NATIONSTAR MORTGAGE LLC, | |
| Defendant. | |

## I.  INTRODUCTION

Before the court are two motions:  (1) Defendant Nationstar Mortgage LLC's

("Nationstar") motion for partial summary judgment (Nationstar Mot. (Dkt. # 16)), and

(2) Plaintiffs Robert Johnson and Kristin Johnson's (collectively, "the Johnsons") cross

motion for partial summary judgment (Johnsons Mot. (Dkt. # 31)).[1]  Nationstar moves

_____

[1] Under Local Civil Rule 7(k), the court will ordinarily consider a motion and cross
motion together.  Local Rules W.D. Wash. LCR 7(k).  The Johnsons' cross motion for summary
judgment also serves as their response to Nationstar's motion.  (*See* Johnsons Mot. at 1.)  As a
response to Nationstar's motion, however, the Johnsons' memorandum was due on May 22,

ORDER - 1

1 for summary judgment on the Johnsons' claims under the Fair Debt Collection Practices

2 Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Washington Consumer Protection Act

3 ("CPA"), RCW ch. 19.16. (*See generally* Nationstar Mot.) The Johnsons oppose

4 Nationstar's motion and move for summary judgment on their FDCPA claim. (*See*

5 *generally* Johnsons Mot.)

6 The court has reviewed the motions, all submissions filed in support of and

7 opposition to the motions, the relevant portions of the record, and the applicable law.

8 Considering itself fully advised,[2] the court GRANTS Nationstar's motion for summary

9 judgment with respect to the Johnsons' FDCPA claim and DENIES the Johnsons' motion

10 on that claim. The court declines to consider Nationstar's motion regarding the

11 Johnsons' CPA claim. Having granted summary judgment on the Johnsons' only federal

12 claim, the court declines to exercise supplemental jurisdiction over the Johnsons'

13 remaining state law claims—including the Johnsons' CPA claim—and therefore

14 DISMISSES those claims without prejudice.

15 //

16 //

17 //

18 

2017. *See* Local Rules W.D. Wash. LCR 7(d)(3). The Johnsons did not file their memorandum
19 until May 25, 2017, and their response to Nationstar's motion was, therefore, untimely. *See id.*
The court nevertheless considers the Johnsons' response because Nationstar had an opportunity
20 to respond to the Johnsons' memorandum and is not prejudiced by the Johnsons' conduct. (*See*
Nationstar Resp. (Dkt. # 36).) The Johnsons did not file a reply memorandum in support of their
21 cross motion. (*See generally* Dkt.)

22 [2] No party requests oral argument, and the court determines that oral argument would not
be helpful to its disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

# II.     BACKGROUND

In 2002, nonparties Richard E. McKinley and Louann C. McKinley (collectively, "the McKinleys") purchased Lot 5, Sudden Valley, Division No. 38, Whatcom County, Washington ("the McKinley Property"). (Req. for Jud. Not. ("RJN") (Dkt. # 17) Ex. 1.)[3] In 2003, the McKinleys obtained a loan ("the McKinley Loan") secured by a deed of trust ("the McKinley Deed of Trust") that was recorded against the McKinley Property. (RJN Ex. 2.) At that time, the street address for the McKinley Property was 77 Sudden Valley Drive SE, Bellingham, Washington. (RJN Ex. 2 at 3, 18, 20, 23; *id.* Ex. 12.) Subsequently, the addresses in the Sudden Valley subdivision changed, and the McKinley Property address became 77 Marigold Drive. (Compl. (Dkt. # 1) ¶ 3; RJN Ex. 3 at 1, 6.)

In 1998, Mr. Johnson purchased Lots 84 and 85, Sudden Valley, Division No. 4, Whatcom County, Washington ("the Johnson Property"). (RJN Ex. 7.) At that time, the street address for the Johnson Property was 77 NE Sudden Valley Drive, Bellingham, Washington. (RJN Ex. 8 at 2, 7; *id.* Ex. 11.) Subsequently, the street address for the Johnson Property also changed and became the same as the former address for the McKinley Property—77 Sudden Valley Drive SE, Bellingham, Washington—instead of the previous "NE" prefix. (RJN Ex. 9 at 3, 12.)

---

[3] Pursuant to Federal Rule of Evidence 201(b), Nationstar asks the court to take judicial notice of several documents that are official records of the Whatcom County Recorder's Office. (*See* RJN at 4 (citing Fed. R. Evid. 201(b) and *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992)).) The Johnsons do not oppose Nationstar's request. (*See generally* Johnsons Mot.; Dkt.) The court grants Nationstar's request and takes judicial notice of the documents attached to Nationstar's request. (*See* RJN Exs. 1-12); Fed. R. Evid. 201(b).

1    In July 2012, Nationstar began servicing the McKinley Loan.  (Janati Decl. (Dkt.

2    # 18) ¶ 4;[4] *see* 4/14/17 Sturdevant Decl. (Dkt. # 14) Ex. 8 at 59 ("The Loan Servicer

3    Nationstar Martgage LLC is managing your loan."), 62 (identifying Nationstar as the

4    "Beneficiary's Authroized Agent").)  The McKinleys defaulted on their loan more than

5    two years later, in September 2014.  (Janati Decl. ¶ 4.)

6    Nationstar subsequently directed the commencement of nonjudicial foreclosure

7    proceedings against the McKinley Property.  (*See* 4/14/17 Sturdevant Decl. Ex. 8 at

8    _____

9    [4] The Johnsons move to strike paragraphs four and five of Fay Janati's declaration
concerning the dates when (1) Nationstar began servicing the McKinley Loan, (2) the McKinleys
defaulted on their loan, and (3) Nationstar generated a work order to secure the vacant McKinley
10   Property.  (Johnsons Mot. at 9-10.)  The Johnsons assert that (1) Nationstar cannot prove these
facts by declaration, but must instead produce documents, and (2) Nationstar is judicially
11   estopped from proving these facts because it did not produce the underlying documents.  (*See
id.*)
12        First, the Johnsons never properly sought to compel the relevant discovery. Although the
Johnsons filed a motion to compel discovery from Nationstar (Mot. to Compel (Dkt. # 13).)  The
13   motion, however, failed to comply with certain requirements in the court's scheduling order, and
as a result, the court struck it without prejudice to refiling.  (4/17/17 Order (Dkt. # 15).)
14   Although the court gave the Johnsons an opportunity to refile their motion to compel in a manner
that complied with the court's scheduling order (*see id.* at 2 & n.1), the Johnsons failed to do so
15   (*see generally* Dkt.).  Having failed to refile their motion to compel despite having the
opportunity to do so, the Johnsons cannot now raise Nationstar's failure to produce the
documents at issue.
16        Second, judicial estoppel is inapplicable.  Judicial estoppel bars a party from making a
factual assertion in litigation "which directly contradicts an earlier assertion in the same
17   proceeding or a prior one," *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989),
and is "tantamount to a knowing misrepresentation to or even fraud on the court," *Johnson v.
18   State, Or. Dep't of Human Res., Rehab. Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998) (quoitng *Ryan
Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362-63 (3d Cir. 1996)).  The
19   Johnsons fail to identify a prior inconsistent position by Nationstar that rises to the level
necessary to invoke judicial estoppel.  (*See* Johnsons Mot. at 9-10.)
20        The best evidence rule is also in applicable.  *See* Fed. R. Evid. 1002.  A declarant may
properly testify to information contained in business records so long as it is within his or her
21   personal knowledge.  *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673-MMM CTX,
2008 WL 9758641, at *15 (C.D. Cal. July 31, 2008); *Zakre v. Norddeutsche Landesbank
22   Girozentrale*, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005).  Accordingly, the court denies the
Johnsons' motion to strike paragraphs four and five of Fay Janati's declaration.

58-65 (containing the Notice of Default); 5/4/17 Bollero Decl. (Dkt. # 19) ¶ 2, Ex. A

(attaching a copy of Notice of Default).) Nationstar, acting on behalf of the McKinley

Deed of Trust beneficiary, appointed non-party Quality Loan Service Corporation of

Washington ("QLS") as successor trustee. (RJN Ex. 5.) QLS issued a Notice of Default

to the McKinleys, dated March 24, 2016. (5/4/17 Bollero Decl. ¶ 2, Ex. A; 5/25/15

Sturdevant Decl. (Dkt. # 32) ¶ 4, Ex. C (Dkt. # 32-4).) The Notice of Default was

addressed to both McKinleys by their full names. (*See id.*) The Notice of Default also

specifically identified the McKinley Deed of Trust by current beneficiary, servicer,

recording date, and recording number, and it referenced the McKinley Property by legal

description and parcel tax identification number. (*See id.*)

QLS posted the Notice of Default at the McKinley Property. (4/14/17 Surdevant

Decl. Ex. 8 at 19 (Answer to Interrogatory No. 8).) QLS also mailed the Notice of

Default—addressed to both of the McKinleys—to several different addresses, including

both "77 Sudden Valley Drive SE" and "77 Marigold Dr." (*Id.* at 56-57; 5/4/17 Bollero

Decl. ¶ 2 Ex. A.) On April 4, 2016, the Johnsons, who reside at what is now known as

"77 Sudden Valley Drive SE," received and opened a copy of the Notice of Default

addressed to the McKinleys. (5/14/17 Bollero Decl. ¶¶ 3-4, Ex. B; *see* Compl. ¶ 7

(describing the Notice of Default from Nationstar contained in the letter from QLS).)

The Notice of Default, however, referenced the lot, division, and parcel number for the

house on 77 Marigold Dr., Bellingham, Washington 98229. (Compl. ¶ 7.)

The Johnsons understood that the Notice of Default from QLS was addressed to

the McKinleys and not to them. (6/12/17 Bollero Decl. (Dkt. # 37) ¶ 2, Ex. D (K.

Johnson Dep.) at 64:17-65:11, 67:22-68:4.)  The Johnsons also understood that the

Notice of Default referenced the McKinley Deed of Trust and not theirs.  (*Id.* at 68:5-18.)

Finally, the Johnsons understood that the Notice of Default referenced the McKinley

Property and not their property.  (*Id.* at 68:19-69:15.)

Nationstar and QLS did not complete the nonjudicial foreclosure process against

the McKinley Property because the McKinleys sold their property to third parties on

April 29, 2016.  (RJN Ex. 10.)  Instead, Nationstar recorded a Deed of Reconveyance on

June 16, 2016.  (RJN Ex. 6.)

Meanwhile, on June 29, 2015, due to the default on the McKinley Loan,

Nationstar asked its vendor, Mortgage Contracting Services, LLC ("MCS"), to verify the

occupancy of the McKinley Property.  (Hager Decl. (Dkt. # 20) ¶ 4; 4/14/17 Sturdevant

Decl Ex. 8 at 16 (stating in response to Interrogatory No. 3 that "[t]he purpose of the visit

was to verify the occupancy and visually inspect the Liened Property").)  MCS assigned

the task to its sub-contractor, Sierra Field Services, Inc. ("Sierra").  (Hager Decl. ¶ 4.)

On July 6, 2015, a Sierra representative initially visited the Johnson Property rather than

the McKinley Property.  (*See* Compl. ¶ 3; *see* 5/25/17 Sturdevant Decl. ¶ 6, Ex. E ("R.

Johnson Dep.") at 27-31; Hager Decl. ¶¶ 4-5.)  Mr. Johnson was aware of the change in

street names and informed the Sierra representative that she had the incorrect address.

(*See* Compl. ¶ 3; Hager Decl. ¶ 5; 6/12/17  Bollero Decl. ¶ 2, Ex. C (R. Johnson Dep.) at

27:14-24, 30:23-25.)  The Sierra representative then visited the McKinley Property.  (*See*

Compl. ¶ 3; 4/14/17 Sturdevant Decl. Ex. 8 at 38 (indicating that the property was

inspected on July 6, 2015).)

On or about July 6, 2015, MCS informed Nationstar that the McKinley Property

was vacant. (Hager Decl. ¶ 4; 4/14/17 Sturdevant Decl. Ex. 8 at 38 (stating:

"Occupancy: Vacant"); Janati Decl. ¶ 5.) MCS also uploaded the following comment to

MCS's proprietary software, which was accessible to Nationstar:

> Property address is 77 Marigold according to sudden valley security station
> and the county assessor. . . . There used to be multiple sudden valley drives
> in this community. A few years ago they changed the address. . . . After
> speaking to an angry homeowner and talking to the assessor, the property
> and owner we are looking for is at 77 Marigold. Marigold used to be sudden
> valley dr [sic] SE but because of massive confusion with parcel delivery etc.
> they changed the road names. . . .

(4/14/17 Sturdevant Decl. Ex. 8 at 39 (capitalization and punctuation in original); Hager

Decl. ¶ 5.)

On July 7, 2015, MCS, on Nationstar's behalf, placed an "Initial Secure" work

order with Preservation Services, LLC, ("Preservation") on a rush basis, in order to

secure the vacant McKinley Property. (Hager Decl. ¶ 6; Janati Decl. ¶ 5.) Preservation,

which is a sub-contractor of MCS, visited the Johnson Property on July 10, 2015—four

days after Sierra's visit. (Hager Decl. ¶¶ 6-7; Compl. ¶ 4.) The Johnsons explained to

the Preservation representative that he was not at the McKinley Property, and the

Preservation representative left without performing any services on the Johnson Property.

(Compl. ¶ 4.) On July 10, 2015, MCS informed Nationstar by email about the address

discrepancy between the Johnson Property and the McKinley Property. (Hager Decl. ¶

7.) The Johnsons received no further visits from Nationstar, QLS, MCS, or any of

MCS's subcontractors. (*See* Compl. ¶ 7.) Neither MCS nor any other entity ever altered

the Johnson Property in any way.  (6/12/17 Bollero Decl. ¶ 2, Ex. C at 73:19-74:6, Ex. D

at 95:7-14.)

After the Johnsons received the letter on April 4, 2016, containing the Notice of

Default addressed to 77 Sudden Valley Dr. SE, they hired an attorney.  (*See* Compl.

¶¶ 7-8.)  The attorney wrote to Nationstar, explained the address problem, and gave

Nationstar information concerning the Notice of Default from QLS.  The Johnsons did

not receive a response from Nationstar.  (*See id.*)  However, the Johnsons have never

owed a debt to Nationstar (6/12/17 Bollero Decl. ¶ 2, Ex. D at 71:14-15; *see also id.* ¶ 6,

Ex. I (Answers to RFAs) at 7 (admitting that from January 1, 2015, to the present, the

Johnsons have not owed any debt to Nationstar)), nor has Nationstar ever serviced any

mortgage that the Johnsons had on any home (*id.* ¶ 2, Ex. C (R. Johnson Dep.) at 9:21-

23).  Further, Nationstar has never demanded money from the Johnsons.  (*Id.* ¶ 2, Ex D at

92:18-19.)

On July 1, 2017, the Johnsons filed suit, alleging causes of action for violations of

the FDCPA, 15 U.S.C. §§ 1692 *et seq.*; violations of the CPA, RCW ch. 19.16;

negligence; and negligent training and supervision.  (*See* Compl. ¶¶ 21-42.)  Nationstar

moves for partial summary judgment on the Johnsons' FDCPA and CPA claims.  (*See*

*generally* Nationstar Mot.)  The Johnsons oppose Nationstar's motion and move for

partial summary judgment on their FDCPA claim.  (*See generally* Johnson Mot.)

//

//

//

# III. ANALYSIS

## A. Legal Standards

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine issue of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id*. at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to

1  identify specific facts from which a fact finder could reasonably find in the nonmoving

2  party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

3      The court is "required to view the facts and draw reasonable inferences in the light

4  most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

5  The court may not weigh evidence or make credibility determinations in analyzing a

6  motion for summary judgment because these are "jury functions, not those of a judge."

7  *Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than

8  simply show that there is some metaphysical doubt as to the material facts . . . . Where

9  the record taken as a whole could not lead a rational trier of fact to find for the

10  nonmoving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380 (internal

11  quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

12  475 U.S. 574, 586-87 (1986)).

13      "[W]hen parties submit cross-motions for summary judgment, each motion must

14  be considered on its own merits."  *Fair Hous. Council of Riverside Cty., Inc. v. Riverside

15  Two*, 249 F.3d 1132, 1136 (9th Cir. 2011) (internal quotation marks and alterations

16  omitted).  Thus, "the court must review the evidence submitted in support of each

17  cross-motion."  *Id.*  The court now addresses the parties' motions for summary judgment.

18      **B.  FDCPA Claim**

19      Both Nationstar and the Johnsons move for summary judgment on the Johnsons'

20  FDCPA claim.  (Nationstar Mot. at 9-19; Johnsons Mot. at 10-15.)  For a plaintiff to

21  recover under the FDCPA, there are three threshold requirements:  (1) the plaintiff must

22  be a "consumer," 15 U.S.C. § 1692a(3); (2) the defendant must be a "debt collector," 15

U.S.C. § 1692a(6); and (3) the defendant must have committed some act or omission in violation of the FDCPA while attempting to collect a "debt," 15 U.S.C. § 1692a(5), from the plaintiff. *See Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009). Nationstar argues that the Johnsons fail each of these elements. (Nationstar Mot. at 9-19.) As discussed below, the court concludes that Nationstar is not a "debt collector" as is required for the Johnsons to prevail on their FDCPA claim, and therefore declines to address Nationstar's remaining two arguments with respect to the Johnsons' FDCPA claim.

The FDCPA requires that the defendant be a "debt collector," which the statute defines as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The statute expressly excludes from this definition "any person collecting or attempting to collect any debt owed or due or asserted to owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Thus, "the FDCPA does not apply to lenders acquiring debt before default." *Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1112 (W.D. Wash. 2011) (citing *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011)).

The Johnsons offer no evidence disputing that (1) Nationstar commenced servicing the McKinley Loan in July 2012, and (2) the McKinleys did not default on their

loan until more than two years later, in September 2014.  (6/12/17 Bollero Decl. ¶ 4, Ex.

G; Fanati Decl. ¶ 4.)  Consequently, based on the undisputed factual record, Nationstar

does not qualify as a "debt collector" under the FDCPA.  *See Rector v. Wells Fargo*

*Dealer Servs.*, 672 F. App'x 779, 780 (9th Cir. 2017) (citing 15 U.S.C. § 1692a(6)(F)(iii))

("The district court properly granted summary judgment on [the plaintiff's] FDCPA

claim because [the plaintiff] failed to raise a genuine dispute of material fact as to

whether defendants were debt collectors within the meaning of the FDCPA."); *Rich v.*

*Bank of Am., N.A.*, 666 F. App'x 635, 639 (9th Cir. 2016) ("Because the admissible

evidence shows that [the defendant] has serviced the loan since before [the debtors']

default, the FDCPA does not apply to [the defendant] pursuant to 15 U.S.C.

§ 1692a(6)(F)(iii)."); *Jara v. Aurora Loan Servs., LLC*, 633 F. App'x 651 (9th Cir. 2016)

("The district court properly dismissed [the plaintiff's] Fair Debt Collection Practices Act

claims because [the defendant] was not a debt collector under 15 U.S.C.

§ 1692a(6)(F)(iii) where it assumed servicing responsibilities to [the debtor's] loan prior

to any default."); *Robinson v. Wells Fargo Bank Nat'l Ass'n*, No. C17-0061JLR, 2017

WL 2311662, at *5 (W.D. Wash. May 25, 2017) ("[A] loan servicer, such as Nationstar,

which acquires servicing rights before the loan at issue is in default, is not a debt

collector under the FDCPA.").

The primary authority upon which the Johnsons rely to oppose Nationstar's

motion and advance their FDCPA claim is *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d

355 (6th Cir. 2012).  (*See* Johnsons Mot. at 12-14.)  In *Bridge*, despite proof of Ms.

Bridge's payment, the defendants made "endless" collection calls to both Ms. Bridge and

Mr. Bridge, threatened foreclosure, assessed monthly late fees, and reported derogatory information to credit reporting agencies. 681 F.3d at 357. The Sixth Circuit reversed the district court's dismissal of the plaintiffs' FDCPA claim on grounds that defendants were not debt collectors under the FDCPA and held that the defendant could be held liable under the Act for their attempts to collect a debt that the plaintiffs had already paid. *Id.* at 362-63. The Sixth Circuit found the defendants' arguments that it was not an FDCPA "debt collector" "disingenuous" because after "after having engaged in years of collection activity *claiming a mortgage is in default*, Defendants now seek to defeat protections of the FDCPA by relying on Plaintiffs' position throughout those years that the *mortgage is not in default.*" *Id.* at 361. In so ruling, the Sixth Circuit stated:

> [An] FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default, despite having dunned plaintiffs for months or years in the face of plaintiffs' pleas or proof that the collector has made some error. A defendant may not retroactively change the status of the plaintiff it has pursued as an alleged debtor. To hold otherwise would defy the clear congressional mandate we are charged with upholding.

*Id.* at 362-63. The Sixth Circuit further held that Mr. Bridge, who was not a party to the loan, was also protected from the defendants' conduct by the FDCPA. *Id.* at 363.

The Johnsons argue that "Nationstar contended that the Johnsons were in default on the debt," and thus Nationstar "was a debt collector" pursuant to *Bridge.* (Johnsons Mot. at 13 (citing *Bridge*, 681 F.3d at 360, 361).) *Bridge*, however, is factually distinguishable. Here, unlike *Bridge*, there is no evidence that Nationstar ever asserted that the Johnsons were in default on a debt. Instead, the evidence before the court affirmatively shows the contrary. Although QLS sent Notices of Default to the Johnsons'

address and the Johnsons opened one of those envelopes, the Johnsons understood that

the Notice of Default was addressed to the McKinleys and not to them (6/12/17 Bollero

Decl. ¶ 2, Ex. D at 64:17-65:11, 67:22-68:4), referenced the McKinley Deed of Trust and

not theirs (*id.* at 68:5-18), and applied the McKinley Property and not their property (*id.*

at 68:19-69:15).  Further, unlike *Bridge*, the Johnsons admit that Nationstar never

demanded any money from them.[5]  (*Id.* at 92:18-19.)

Nevertheless, as the Johnsons point out (*see* Johnsons Mot. at 11), the court must

consider not just whether Nationstar's foregoing communications or actions deceived or

misled the Johnsons, but rather whether Nationstar's communications or actions would be

likely to deceive or mislead "a hypothetical least sophisticated debtor."[6]  *See Wade v.*

*Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (internal quotation marks

omitted).  The least sophisticated debtor standard "presumes a basic level of

understanding and willingness to read with care." *Gonzales v. Arrow Fin. Servs., LLC*,

660 F.3d 1051, 1062 (9th Cir. 2011) (quotation and citation omitted).  The court

concludes that Nationstar's actions do not constitute a violation of the FDCPA because

even the least sophisticated debtor would understand that Nationstar was not attempting

---

[5] In addition, in *Bridge*, the plaintiffs alleged that Defendants were "debt collectors notwithstanding the definitional exclusion contained in § 1692a(6)(F)(iii) (excluding activity concerning a debt which was not in default at the time it was obtained) because Defendants sought collection of [the plaintiff's] 'debt' which they claimed was already in default at the time they obtained it." *Bridge*, 681 F.3d at 360.  Here, unlike the allegations in *Bridge*, it is undisputed that the McKinleys did not default on their loan until more than two years after Nationstar began servicing the loan.  (*See* Janati Decl. ¶ 4.)

[6] "Whether a communication would confuse a least sophisticated debtor, thereby violating the FDCPA, is a question of law." *Gold v. Midland Credit Mgmt., Inc*., No. 13CV02019BLFMEJ, 2014 WL 3371012, at *3 (N.D. Cal. July 9, 2014).

to collect a debt from the Johnsons based on a Notice of Default that did not name the Johnsons, did not concern the Johnsons' Deed of Trust, and did not identify the Johnson Property.[7]  (6/12/17 Bollero Decl. ¶ 2, Ex. D at 64:17-65:11, 67:22-69:15.)  *See, e.g.*, *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (concluding that even a hypothetical least sophisticated debtor would understand that a collection effort was aimed at one and not two delinquent accounts where the letters contained the same social security identifier, identical balances, the same creditor, nearly identical account and file identifiers, and the same last payment dates).  Accordingly, the court grants Nationstar's motion for summary judgment on the Johnsons' FDCPA claim and denies the Johnsons' motion for summary judgment on that claim.

### C.  Supplemental Jurisdiction

The Johnson allege only federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) of the FDCPA.  (Compl. ¶ 9.)  The court has now granted summary judgment to Nationstar on the Johnsons' FDCPA claim, *see supra* § III.B, which is the only federal question in the Johnsons' complaint (*see generally* Compl.).

---

[7] In addition to the misdirected Notice of Default, Nationstar's vendor, MCS, sent a subcontractor to verify the occupancy of the McKinley Property (Hager Decl. ¶¶ 4-5) and another subcontractor to perform preservation services on the McKinley Property (*id.* ¶¶ 6-7). Both of these subcontractors initially mistakenly arrived at the Johnson Property rather than the McKinley Property.  (*Id.* ¶¶ 4-7.)  The Johnsons, however, were able to correct and redirect the two subcontractors who mistakenly visited their property instead of the McKinley Property.  (*See* 6/12/17 Bollero Decl. ¶ 2, Ex. C at 27:4-28:13; *id.* Ex. D at 32:9-33:15, 34:6-25, 36:6-19.)  Both subcontractors left when the Johnsons informed them of the address mistake.  (*Id.*)  Further, neither subcontractor did any damage to the Johnson Property.  (*Id.* ¶ 2, Ex. C at 73:19-74:6, Ex. D at 95:7-14.)  The court concludes that even if these actions could be considered an attempt to collect a debt by Nationstar, a hypothetical least sophisticated debtor would understand that any such collection effort was not aimed at the Johnsons, but rather at the McKinleys.

1    "[W]here a district court has dismissed all claims over which it has original

2    jurisdiction, it may *sua sponte* decline to exercise supplemental jurisdiction over

3    remaining state law claims." *Andrews v. Wash. State Dep't of Soc. & Health Servs.*,

4    No. C15-5871BHS, 2017 WL 320621, at *1 (W.D. Wash. Jan. 23, 2017) (alterations in

5    original) (quoting *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088,

6    1096 (N.D. Cal. 2015)); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 n.3 (9th

7    Cir.), *supplemented*, 121 F.3d 714 (9th Cir. 1997), *as amended* (Oct. 1, 1997).  District

8    courts may decline to exercise supplemental jurisdiction if:  (1) the claim raises a novel

9    or complex issue of state law; (2) the state law claim substantially predominates over the

10   federal claim; (3) the district court has dismissed all claims over which it has original

11   jurisdiction; or (4) if there is some other exceptional and compelling reason to decline

12   jurisdiction.  *See* 28 U.S.C. § 1367(c).  In deciding whether to exercise supplemental

13   jurisdiction, the court should consider the interests of judicial economy, convenience,

14   fairness and comity.  *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997);

15   *Smith v. Lenches*, 263 F.3d 972, 977 (9th Cir. 2001).

16       Here, two of the enumerated provisions set forth in 28 U.S.C. § 1367(c) apply.

17   First, by granting summary judgment to Nationstar on the Johnsons' FDCPA claim, the

18   court dismissed the only claim over which it has original jurisdiction.  *See* 28 U.S.C.

19   § 1367(c)(3).  Second, because only state law claims remain, the state law claims

20   necessarily substantially predominate over the federal claims.  *See id.* § 1367(c)(2).

21       Further, the interests of judicial economy, convenience, fairness, and comity do

22   not favor the exercise of supplemental jurisdiction.  "[I]n the usual case in which all

1  federal-law claims are eliminated before trial, the balance of factors to be considered

2  under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and

3  comity—will point toward declining to exercise jurisdiction over the remaining state-law

4  claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting

5  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988), *superseded on other*

6  *grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557

7  (10th Cir. 2000)).  Here, trial is two months away.  (*See* Sched. Ord. (Dkt. # 11) at 1

8  (setting a September 11, 2017, trial date).)  Although the court has resolved certain

9  discovery issues for the parties (*see* 6/2/17 Order (Dkt. # 35)), the court has not dealt in

10  any substantive manner with the Johnsons' state law claims (*see generally* Dkt.).

11  Moreover, although the Johnsons' state law claims may rest on similar—if not

12  identical—facts, the federal and state law claims are not similar in law and may not be

13  similar in outcome.  Thus, issues of comity also favor having these state law claims heard

14  in state court.  In sum, the court perceives no reason to depart from the "usual case" in

15  which the court dismisses the state law claims without prejudice following the court's

16  pretrial disposition of all federal claims.

17  **IV.    CONCLUSION**

18      For the reasons stated above, the court DENIES the Johnsons' motion for

19  summary judgment (Dkt. # 31) and GRANTS in part and DECLINES TO RULE in part

20  on Nationstar's motion (Dkt. # 16).  Specifically, the court GRANTS Nationstar's motion

21  and enters summary judgment for Nationstar on the Johnsons' FDCPA claim, but

22  DECLINES TO RULE on Nationstar's request for summary judgment on the Johnsons'

1  CPA claim.  Instead, having granted summary judgment in Nationstar's favor on the only

2  federal claim in the Johnsons' complaint, the court declines to exercise supplemental

3  jurisdiction over the Johnsons' remaining state law claims and dismisses those claims

4  without prejudice.

5          Dated this 12th day of July, 2017.

6

7

8                                              JAMES L. ROBART
                                               United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22